CASE 40--ACTION BY HESTER T. CAMPBELL AND OTHERS
AGAINST JAMES M. SIMMONS.—May 4, 1910.

## Campbell, &c. v. Simmons.

Appeal from Warren Circuit Court.

McKENZIE Moss, Circuit Judge.

Judgment of dismissal and plaintiffs appeal.—Affirmed.

1   Wills—Election—Agreement to Renounce—Validity.—The
    widow and adult childien of testator could renounce the provisions of his will in their favor, and agree that the property
    be distributed among them according to statute.
2.  Wills—Construction.—Where a will gave a testator's
    single daughters the use of property under certain
    conditions while they remained unmarried, and gave
    no other estate until a future time fixed as
    the period of distribution, so that the children could take
    nothing under the will unless they were alive at that time,
    their interests otherwise passing to their children
    or their children's decendant's, if any of testator's
    children should die befòre that period, leaving
    issue, such children or children's descendant's would take
    the property under the will, and not as heirs of the parent.
3.  Wills—Election—Operation.—Testator's widow and children prior to the time for distribution fixed by the
    will, after having renounced their interests under the
    will and agreed to take under the statute, could not convey
    to a purchaser a fee-simple title.

T. W. THOMAS and W. B. GAINS for appellants.

C. W. McELROY, GEO. H. GALLOWAY, JOHN M. GALLOWAY, D. W. WRIGHT and SIMS & RODES for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

One G. W. Campbell died in Warren county, Ky., and left surviving him a widow and seven or eight children, all of whom were over 21 years of age. At least three of his daughters were single at the time of his death, two of whom survive and are still single. His widow is also alive and unmarried. He left a will disposing of his property, from which we quote so much thereof as will throw light upon the issues involved on this appeal:

"2nd. I give, will and bequeath to my beloved wife, Hester T. Campbell, all of my estate and property, both real and personal and of every name and nature whatsoever, including stocks, bonds, notes, accounts, money and choses in action, to have, hold, control and use so long as she remains my widow.

"3rd. In the event of the remarriage of my said wife, I will and direct that she shall then have, hold and take of my estate and property as aforesaid, according to and by virtue of the provisions of the laws of the State of Kentucky.

"4th. If my wife shall remarry, I then will, give and bequeath all of my estate and property, as aforesaid, to my daughters, who may be single and unmarried at the date of the remarriage of my said wife, subject to the life estate of my said wife in my estate and property as aforesaid, so long as they remain single and unmarried.

"5th. In the event of the remarriage and death of my said wife before the marriage and death of all of my single daughters aforesaid, I then, and in that event, will, give and bequeath to such of my daughters as may be single and unmarried at the death of my said wife, the life estate and interest of my said wife in my estate and property as aforesaid until they shall all marry, or die, together with the other of my estate and property as aforesaid.

"6th. As my single daughters as aforesaid, shall marry, it is my will and I do direct, that their interest in my said estate and property shall cease and terminate, until the marriage, or death of the last of my single daughters as aforesaid, at which time their interest in and right to my estate and property as aforesaid shall again fully revive and begin. * * *

"8th. If my said wife shall die without remarriage I give, will and bequeath to my daughters, who may be single and unmarried, at the death of my said wife all of my estate and property as aforesaid so long as they shall remain single and unmarried, but, if any of my said daughters shall marry, then, and in that event, their interest in my estate and property as aforesaid shall cease and terminate, until the marriage or death of the last of my single daughters as aforesaid, at which time their interest in and right to my estate and property as aforesaid shall fully revive and begin.

"9th. After the death of my said wife and the marriage or death of the last of my single daughters as aforesaid, it is my will and I so direct, that my personal estate and property of every name and nature whatsoever, shall be divided equally among all of my children, or their heirs according to their respective rights and interests and that all of my real estate and property of whatsoever kind be divided equally among all of my children or their heirs, or that the same be sold and the proceeds of sale be divided equally among all of my children or their heirs, according to their respective rights and interests as may appear to their best interest, all according to and by virtue of the laws of the State of Kentucky. * * *

"13th. I will and direct that all the right and interest which I have herein devised and bequeathed to my single and unmarried daughters as aforesaid, in

my estate and property, during the time they are single and unmarried as aforesaid, shall be held in trust for them, and only the proceeds, increase, interest and rents of said estate and property shall be used for, or by them, and no right, or power is given them, or any one for them, to sell or dispose of their right and interest in my said estate and property in any vay whatever."

All the parties appeared in the county court in March, 1908, to probate the will. It appears that the widow and all the children were present and sui juris, and from what appears it may be reasonably inferred that a contest of the will was contemplated, for they all entered into a written agreement consenting that the will might be recorded, but expressly waiving any right or benefit they might obtain thereunder, and agreed that the property might be distributed among them as fixed by the statutes. This agreement was recorded in the county court with the will; and the county court appointed an administrator, and directed that the property be distributed according to the agreement instead of the will. The parties, having some doubt as to the validity of this agreement, filed a petition in the circuit court, all being parties thereto, and the circuit court adjudged the agreement valid and approved the action of the county court in ordering a distribution of the property as stated. After this occurred, the widow and all the children entered into a written contract with appellee, whereby they agreed to sell and convey to him the land, something over 180 acres, at the price of $35 an acre, and agreed to make him a deed of general warranty. Pursuant to this writing, they tendered him a deed in due form warranting the title. Appellee refused to accept it upon the ground that appellants could not for several

reasons convey to him a fee-simple title to the land. This action was then brought by appellants to force appellee to accept the deed and pay the agreed purchase price.   On the trial the lower court sustained appellee's objections and dismissed appellants' petition, from which action of the lower court they appeal.

Appellee contends that appellants, although adults, had no lawful power to ignore the provisions of the will and agree to take the property under the law, and that the county court was without authority to render a judgment ratifying such an agreement, and, for the same reason, the circuit court's judgment with reference to the agreement was invalid, and not binding. We have no hesitancy in saying that the agreement referred to and the judgments of the courts were and are binding upon the widow and children who were parties thereto.   The widow had a right to, and did, in effect, renounce the provisions of the will, and the unmarried daughters being adults, had the right and power to decline the devises made to them, which they, in effect, did.   See the cases of Waller's Adm'r v. Marks, etc., 100 Ky. 541, 38 S. W. 894, 19 Ky. Law Rep. 121; L. & N. R. R. Co. v. Sanders, 44 S. W. 644, 19 Ky. Law Rep. 1941; Sprigg, etc. v. Sprigg's Trustee, 90 S. W. 985, 28 Ky. Law Rep. 944; Worthington v. Worthington, 35 S. W. 1039, 18 Ky. Law Rep, 215.

If the testator had given his children, all of whom were parties to the agreement and action, a vested estate in remainder in his property, or any interest which took effect prior to the time fixed by the will for distribution of the property, the judgment of the circuit court at least would have been binding upon the children as well as their children who would take

the estate after the vested remainder of their parents terminated. See Hermann v. Parsons, 117 Ky. 244, 78 S. W. 125, 25 Ky. Law Rep. 1344, Kendall v. Crawford, 77 S. W. 364, 25 Ky. Law Rep. 1224, and Whallen v. Kellner, 104 S. W. 1018, 31 Ky. Law Rep. 1285.

The obstacles which prevents appellants from conveying to appellee a fee-simple title to the land in question is: The testator did not devise any estate or interest in his property to his children, except to the unmarried daughters, until the time fixed in the will as the period of distribution. They did not and could not take anything under the will except upon the condition they were alive at the time for distribution, and, if any of them were dead at that time, their interest was to pass to their children or their childrens' descendants. We have been unable to find any words in the will which seemingly devised to his children any interest in his property until the period named, except to his single daughters who were given the use of the property under certain conditions while they remained unmarried. But in the thirteenth and other clauses of his will he expressly provides that they shall have no other interest in the property than that expressly devised until the period of distribution. The testator evidently intended to hold the title to the property in abeyance until that period arrived. It therefore results that if any one of the children of the testator should die before that period, and leave children surviving, or, if no children, descendants of children, they would take the property under the will, and not as heirs of the parent. The following cases are in point: Dohn's Ex'or v. Dohn, etc., 110 Ky. 884, 62 S. W. 1033, 64 S. W. 352, 23 Ky. Law Rep. 256; Robb v. Belt, etc., 12 B. Mon. 643; Wren v.

Hynes, etc., 2 Metc. 129. In the case last named the court considered the following clause of a will, to-wit: "It is my will and desire that when my youngest child shall arrive at the age of twenty-one years, that the twelve thousand dollars set apart in bank stock shall be equally divided among my surviving children, or their heirs." The court in its opinion thoroughly considered the matter and closed its opinion with the following language: "Here such a result was guarded against by the testator himself by the terms of the devise. If any of his children should die, 'their heirs,' by whom he evidently meant their issue, were to take the share of the deceased parent. If they should die without issue, then the survivors would be entitled to it. This in our opinion is what was intended by the testator."

For these reasons, the judgment of the lower court is affirmed.